IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| ROBERT J. MOSKO, JR. and ) | |
| BRENDA R. MOSKO, ) | Case No. 04-52834 |
| ) | |
| Plaintiffs, ) | Adv. No. 04-6077 |
| v. ) | |
| ) | |
| AMERICAN EDUCATION SERVICES, ) | |
| GENERAL REVENUE CORPORATION, ) | |
| DIVERSIFIED COLLECTION SERVICES, ) | |
| INC., and SLMA SERVICING CORP., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**MEMORANDUM OPINION**

This matter was remanded to this Court pursuant to a Memorandum Opinion and Order of the United States District Court for the Middle District of North Carolina (the "District Court"), dated March 1, 2006. This opinion will address the two issues that were remanded.[1]

FACTS

Complete findings of fact were set forth in the September 29, 2005 Order and will not be repeated herein. Only facts related to the appeal of the Court's September 29, 2005 Order will be discussed below.

1. On September 1, 2005, a trial was held in this Court determining the causes of action set forth in Adversary Proceeding Number 04-6077.

---

[1] A trial on the merits of the adversary proceeding was held in the Bankruptcy Court on September 1, 2005. This Court entered a Memorandum Opinion and Order determining the issues at trial on September 29, 2005 (the "September 29, 2005 Order"). The September 29, 2005 Order is incorporated herein in its entirety unless otherwise specified.

2.      On September 29, 2005, this Court issued a Memorandum Opinion and Order granting a full discharge of the student loan debt of the female Debtor and a partial discharge of the student loan debt of the male Debtor (the "September 29, 2005 Order").  Both Debtors owed their student loan debt to Educational Credit Management Corporation ("ECMC").

3.      On November 29, 2005, ECMC filed a Notice of Appeal to the District Court seeking to have the September 29, 2005 Order reversed and to have the student loan debts owed by the Debtors to ECMC fully reinstated.

4.      The District Court entered a Memorandum Opinion and Order on March 1, 2006 (the "District Court Order") whereby the District Court remanded two issues to this Court for clarification and further consideration.

## ANALYSIS

There are two issues that were remanded to this Court for clarification and reconsideration.  These two issues are (1) whether, considering the Debtors' household finances, the male Debtor failed to meet his burden of proof under the second prong of the Brunner[2] test and (2) whether, considering the Debtors' household finances, the female Debtor failed to meet her burden of proof under the second prong of the Brunner test.

### A.  The Second Prong of the Brunner Test as Related to the Male Debtor

ECMC argued on appeal that this Court erred in granting the male Debtor a partial

---

[2] The Brunner test requires a three-part showing by the debtor: "(1) that the debtor cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans."  Miller v. Pa. Higher Educ. Assistance Agency (In re Miller), 37 F.3d. 616, 623 (6th Cir. 2004)(citing Brunner v. N.Y. State Higher Educ. Serv. Corp., 831 F.2d 395, 396 (2d Cir. 1987)).

discharge of his student loan debt because this Court found that the male Debtor failed to meet the second prong of the Brunner test and that every prong of the Brunner test must be met before a discharge can be granted.  See District Court Order at 5.  The District Court agreed and found that, while the Fourth Circuit has not spoken directly on the issue, the law in the Fourth Circuit is that a full or partial discharge of a student loan debt cannot be granted without a debtor meeting all three prongs of the Brunner test.  See District Court Order at 5.

However, the District Court did not agree with ECMC's allegation that this Court failed to comply with this rule.  The September 29, 2005 Opinion stated that the male Debtor "did not meet his burden of proof on the additional circumstances prong of the Brunner test."  See District Court Order at 5 citing In re Mosko, Case No. 04-52834, Adv. No. 04-6077, slip. op. at 12 (Bankr. M.D.N.C. Sept. 29, 2005).  However, as the District Court Order explained, this Court's opinion later indicated that "it would be an undue hardship on Robert Mosko to repay the full amount of his student loans."  See id.  The District Court stated that these two findings were consistent and that it would be reasonable to conclude that "even if Robert Mosko's medical condition resolves favorably and he is able to return to work, his earnings are not likely to ever reach a level where he could pay his full student loan debt."  See id.

> This satisfies the second requirement by demonstrating that his inability to maintain a minimal standard of living while paying his full student loan debt is not likely to change.  It would be reasonable to conclude that Robert Mosko had failed to demonstrate that he would never be able to pay any of his debt without falling below a minimal standard of living.  Thus, Robert Mosko may have satisfied the second requirement when his debt is viewed in its entirety but failed to satisfy it in a way that would entitle him to a full discharge.

See id. at 6.

The Court has reviewed the entire record in this case and re-analyzed its findings of fact

and conclusions of law in light of the District Court Order.  It is the finding of this Court that the male Debtor met all three prongs of the Brunner test, including the prong at issue, prong two.  In making such a finding, this Court considered the Debtors' household finances, which naturally includes the income and expenses of both Debtors.[3]  Based upon the Debtors' household income, the male Debtor cannot and could not repay his student loan debt in its entirety to ECMC.  To require the male Debtor to do so would constitute an undue hardship on him and his family.  A comparison of the Debtors' household income with their household expenses results in a deficiency of $1,200 per month.[4]  See In re Mosko, Case No. 04-52834, Adv. No. 04-6077, slip. op. at 11 (Bankr. M.D.N.C. Sept. 29, 2005).  The male Debtor would have to find employment, assuming that he is medically able to do so, and from said employment he would have to net at least $1,200.00 per month for the household to just break even.  See id.  This Court estimated

---

[3]The female Debtor has an average monthly income of $1,400.00 per month.  A pay-stub of the female Debtor revealed gross monthly pay of $3,833.00 and net pay of $1,171.76 for the month of April 2005.  The female Debtor withholds the following per month: $450.00 to pay her salary for the summer months, $229.98 for mandatory state retirement, $334.50 for federal income tax, $222.82 for social security, $165.00 for state income tax, $9.00 for life insurance, $41.50 for liability insurance for teachers, $5.00 for charitable contributions to the United Way, $100.00 to repay a 401(k) loan (the Debtors borrowed against 401(k) funds to keep their vehicle from being repossessed), $48.00 for vision health insurance, $11.70 for dental health insurance, and an average of $627.33 for health insurance.  The male Debtor has no income.

[4]The male Debtor testified that their basic monthly expenses total $2,656.00.  This includes the following: $450.00 for rent, $140.00 for utilities, $27.00 for telephone, $50.00 for long distance service, $75.00 for internet service, $420.00 for day care (for which the Debtors pay a reduced rate because the female Debtor is employed by the county), $415.00 for their car, $475.00 for groceries, $100.00 for car insurance, $15.00 for trash collection, $24.00 for the male Debtor's C-Pat machine, $75.00 (average) for the mask for the C-pat machine, $150.00 to $200.00 for medications, and $350.00 for gas.  The Court did not include some of the Debtors' monthly expenses in its calculations as the Court concluded that such expenses were not necessities; these expenses included $80.00 per month for cell phones and $60.00 per month for cable television.

that the male Debtor would need to make a salary of approximately $30,000.00 per year in order to net $1,200.00 per month, and that the male Debtor had made $30,000.00 to $35,000.00 per year when he was employed full-time in his field. See id.  Given that the male Debtor's medical condition is worsening, and given that he is unable to find any job at all, much less $30,000.00 per year, and given that the male Debtor has never earned more than $30,000.00 to $35,000.00 per year, and given that a job paying $30,000.00 per year would allow him to do no more than contribute enough income to the Debtors' household to allow them to break even, the facts demonstrate a certainty of hopelessness that the male Debtor will ever be able to pay the $63,417.06 that he owes to ECMC.

This Court concludes that even if medical condition of the male Debtor improves to the extent that he may return to work, it is extremely unlikely that his earnings would ever reach a level where he could repay his student loan debt.  Hence, he would be unable to maintain a minimal standard of living while paying his student loan debt, and the male Debtor has met the second prong of the Brunner test.  After carefully examining the household income and expenses of the Debtors, this Court finds that it would be an undue hardship on the male Debtor to repay any portion of his student loan debt.  Thus, the male Debtor's student loan debt to ECMC is discharged in its entirety.

### B.  The Second Prong of the Brunner Test as Relates to the Female Debtor

The District Court remanded consideration of the female Debtor's student loan debt to this Court in order for this Court to analyze the household finances of the Debtors and determine whether the female Debtor is entitled to a discharge of her student loan debt.

As discussed above, the household income of the Debtors falls $1,200.00 short in

meeting their monthly expenses. The Debtors' expenses are reasonable and are certainly not excessive or luxurious. In fact, the household expenses for rent and food are low for a family of three, and the budget provides no room for essentials like clothing or doctor visits. The female Debtor cannot repay any portion of her student loan debt and still maintain a minimal standard of living for herself and her family.

As analyzed in the September 29, 2005 Order, the only chance for the Debtors' household finances to improve involves the male Debtor obtaining employment that pays him significantly more than $30,000.00 per year.[5] The male Debtor has serious medical problems that currently prevent him from working outside the home and that will likely prevent him from ever obtaining employment comparable to his former positions at Wachovia or Lowe's.[6] Even if his medical condition improved to that extent that he could work, the male Debtor was only making $30,000.00 to $35,000.00 at the peak of his career. Thus, even under the best of circumstances, it is extremely unlikely that the Debtors' household income will significantly improve in the

---

[5] An annual income of $30,000.00 per year would allow the Debtors' household income to break even with their household expenses.

[6] In its appellant brief to the District Court, ECMC cites two cases for the proposition that some corroborating medical evidence--beyond testimony by a debtor--must be presented in order for a court to consider a debtor's medical condition when determining undue hardship under the Brunner test. See In re Spinney, 266 B.R. 800, 806 (Bankr. N.D. Ohio 2001, In re Norasteh, 311 B.R. 671, 678 (Bankr. S.D.N.Y. 2004). This Court adopts the reasoning of In re Mosley, which declined to follow both cases cited by ECMC. In re Mosley, 330 B.R. 832 (Bankr. N.D. Ga. 2005). The Mosley court found that requiring corroborating evidence such as expert testimony contravenes the Federal Rules of Evidence and is a great expense to any party, especially a debtor in a bankruptcy proceeding. See id. at 844. "It is extraordinary for dischargeability litigation that hinges on a debtor's medical condition to actually hinge on medical testimony. This is because all dischargeability litigation involves real persons who are debtors under the Bankruptcy Code and cannot afford to hire medical experts to testify to the effect of their disease on their earning capacity." See id. Further, the Mosley court stated that it was "naive" to think that a debtor could subpoena a professional to testify on his behalf. See id.

future. The facts are more than adequate to indicate that this state of affairs is likely to persist for a significant portion of the repayment period of the female Debtor's student loans, if not for the entire period.

The female Debtor satisfied her burden under all three prongs of the <u>Brunner</u> test. She is entitled to a full discharge of her student loan debts.

This memorandum opinion constitutes the Courts' findings of fact and conclusions of law. A separate order will be entered pursuant to Fed. R. Bankr. P. 9021.

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
WINSTON-SALEM DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ROBERT J. MOSKO, JR. and | ) | |
| BRENDA R. MOSKO, | ) | Case No. 04-52834 |
| | ) | |
| Plaintiffs, | ) | Adv. No. 04-6077 |
| v. | ) | |
| | ) | |
| AMERICAN EDUCATION SERVICES, | ) | |
| GENERAL REVENUE CORPORATION, | ) | |
| DIVERSIFIED COLLECTION SERVICES, | ) | |
| INC., and SLMA SERVICING CORP., | ) | |
| | ) | |
| Defendants. | ) | |

## PARTIES IN INTEREST

Robert J. Mosko, Jr.

Brenda R. Mosko

Richard L. Jackson, Esquire

Michael D. West, Esquire

Anna S. Gorman, Esquire